# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NICHOLE R. MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-15-256-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Nichole R. Miller requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: whether the decision was supported by substantial evidence, and whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on August 26, 1985, and was twenty-nine years old at the time of the most recent administrative hearing (Tr. 436). She has at least a high school education, and has worked as a server and photographer (Tr. 285). The claimant alleges she has been unable to work since May 30, 2009, due to scoliosis (Tr. 97).

**Procedural History**

On July 7, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Trace Baldwin held an administrative hearing and determined the claimant was not disabled in a written decision by ALJ Osly F. Deramus writing for ALJ Baldwin and dated March 10, 2011 (Tr. 18-29). The Appeals Council denied review, but this Court reversed the ALJ's decision in Case No. CIV-12-160-RAW-KEW, and remanded the case for proper consideration of a treating physician opinion and functional capacity evaluation. On remand, ALJ Doug Gabbard, II, held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated May 19, 2015 (Tr. 271-286). The Appeals Council again denied review, so ALJ Gabbard's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she could lift/carry ten pounds occasionally and frequently, stand/walk two hours in an eight-hour workday, and sit for six hours during an eight-hour workday. Additionally, he found that she could frequently climb ramps and stairs but never climb ladders, ropes, and scaffolds; had no limits on balancing but could only occasionally stoop, kneel, crouch, and crawl; had no limits on reaching in front but could only occasionally work overhead bilaterally; could occasionally push/pull with her upper and lower extremities; and that she must be allowed to alternately sit and stand every thirty minutes or so throughout the workday for the purposes of changing positions, but without leaving the workstation (Tr. 277). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, document preparer and touch-up screener (Tr. 285-286).

## Review

The claimant contends that the ALJ erred: (i) by improperly assessing her RFC, including the opinion of a treating physician, consultative physician, and functional capacity evaluation, as well as her nonsevere impairments, and (ii) by improperly determining the jobs she could perform at step five. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairment of scoliosis, as well as the nonsevere impairments of affective mood disorder, anxiety disorder, borderline intellectual functioning, adjustment disorder, and diabetes mellitus (Tr. 274). The medical evidence reveals that the claimant was regularly treated by Dr. Myra Gregory from 2008 through the present. On September 15, 2010, Dr. Gregory completed a Medical Source Statement (MSS) as to the claimant's physical ability to do work-related activities. On that form, she indicated that the claimant could lift less than ten pounds occasionally, stand/walk less than two hours in an eight-hour workday, must periodically alternate sitting and standing to relieve pain, and that she was limited in both her upper and lower extremities with regard to pushing and pulling. She attributed this last limitation to the claimant's back pain, noting that pain medications helped, but did not relieve the pain entirely (Tr. 235). Additionally, she indicated that the claimant could occasionally climb ramps/stairs/ladders/rope/scaffold, but never balance, kneel, crouch, or crawl (Tr. 235). She further indicated that the claimant was limited in reaching all directions, handling, fingering, and feeling, stating that the claimant could not reach above her head much due to back pain (Tr. 236). Finally, she limited the claimant with regard to temperature extremes, stating that temperature drops can cause tightening of the muscles in the back (Tr. 236).

The following month, Doin Dahlke, a certified disability analyst, conducted a functional capacity evaluation of the claimant. Mr. Dahlke found that the claimant demonstrated an ability to occasionally lift/carry up to twenty pounds; that she could constantly balance, reach immediate bilaterally, handle, and finger; that she could

-5-

frequently walk, climb stairs, reach with a five-pound weight, reach overhead, sit, and stand; and that she could occasionally carry up to twenty pounds, stoop, kneel, crouch, push/pull a cart (Tr. 197). He then stated that the claimant required a change from sitting to standing and vice versa after only twenty to thirty minutes of either activity, and that she required frequent breaks throughout the day (Tr. 197). He then stated that although her lift/carry ability was in the light range, her overall limitations placed her in the sedentary range of work (Tr. 198). As to her range of motion, Mr. Dahlke found that the claimant was limited in lateral flexion and extension of her lumbar region, that she had a higher left hip than right hip, and higher left shoulder than right shoulder, as well as demonstrating kyphosis on the right in her thoracic area, consistent with scoliosis (Tr. 202). She tested with no problems with walking, which was consistent with observation outside formal testing, although he noted she asked to stop and rest after 7:45 minutes, stating she had increased pain and numbness down her legs with prolonged walking (Tr. 203-204).

On December 7, 2010, Dr. Krishnamurthi, M.D., completed a physical MSS assessment, indicating that the claimant could lift/carry up to twenty pounds occasionally and ten pounds frequently, sit for an hour at a time up to six hours in an eight-hour workday, stand/walk for an hour at a time each up to two hours in an eight-hour workday, and that she could frequently reach, handle, finger, and feel (Tr. 225-227). He found she could only occasionally perform postural activities, that she could have up to frequent exposure to environmental limitations, and that she could handle moderate noise (Tr. 228-229).

The claimant also attended a consultative examination as to her mental impairments. On November 30, 2010, Dr. Denise LeGrand, Psy.D., conducted a psychological assessment, including an IQ assessment (Tr. 210). Dr. LeGrand determined that the claimant's overall cognitive functioning was in the low average range, with her vocabulary score (which was most representative of her overall functioning) placing her in the area of borderline intellectual functioning (Tr. 212).

In his written opinion, the ALJ extensively summarized the medical record, as well as the claimant's own testimony from both hearings and her mother's testimony from the first hearing (Tr. 274-284). At step two, the ALJ noted Dr. LaGrand's evaluation but found certain moderate limitations assigned by her to be inconsistent with the claimant's verified record earnings (after the alleged onset date from 2013 through the date of the decision); her ability to complete the written portion of history; her ability to be cooperative, alert, and responsive during the exam; that she graduated high school and described herself as a good student; that she can drive; and that she could follow written and spoken instructions very well (Tr. 275). He then stated that he found no evidence of any work-related limitations as to any of her nonsevere impairments, including her mental impairments. At step four, the ALJ declined to give controlling weight to Dr. Gregory's opinion because: (i) at the time she completed the MSS, she was treating the claimant every four to five months and finding no physical abnormalities; (ii) she did not recommend that the claimant be evaluated by an orthopedic or neurosurgeon, nor did she prescribe physical therapy; (iii) she was not referred for injections; (iv) Dr. Gregory found she was limited in handling, fingering, and feeling, but nothing in her

treatment records reflected those limitations, nor did they support a finding that she could stand/walk less than two hours; (v) Dr. Gregory may have been completing the MSS because she sympathized with the claimant and that it was likely more an act of courtesy; and (vi) the claimant had been working at SGA since October 2013, which strongly indicated she was not as limited as Dr. Gregory suggested (Tr. 282). As to Mr. Dahlke's functional capacity evaluation, the ALJ afforded it diminished weight because he did not find that the claimant required frequent breaks throughout the day, she had been working full time and reported caring for young children, and had only undergone conservative treatment. Several times in his opinion the ALJ noted that the claimant had continued to gain weight, which likely added stress to her back, but seemed to indicate that it was her fault for gaining weight rather than considering how her weight affected her RFC (Tr. 282-283). The ALJ then gave Dr. Krishnamurthi's opinion "great weight," stating it was consistent with the evidence as a whole, but that he had modified the RFC to sedentary with no problems balancing, based on the subjective complaints of the claimant and lack of limitation in balancing (Tr. 283). He then noted that the state reviewing physicians had found the claimant capable of medium work, and he also gave these opinions great weight but "modified" (essentially rejected) them to sedentary work with additional limitations (Tr. 283).

The claimant first contends that the ALJ committed error at step four by: (i) only affording diminished weight to Dr. Gregory's opinion, (ii) rejecting Mr. Dahlke's assessment as an opinion instead of an objective measure of her abilities, (iii) giving great weight to Dr. Krishnamurthi's opinion, and (iv) not finding her mental impairments

severe at step two and failing to including them in the RFC at step four. Here, the ALJ provided a detailed discussion of the relevant evidence in the record, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Taking each of the four alleged step four errors in turn, the undersigned Magistrate Judge notes that the ALJ afforded Dr. Gregory's opinion diminished weight. An ALJ is required to assign controlling weight to the medical opinions of treating physicians only if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 *and* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The pertinent factors include: (i) the

length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5. As discussed above, the ALJ's treatment of Dr. Gregory's opinion meets these standards. The ALJ's opinion was thus sufficiently clear for the Court to determine the weight he gave to Dr. Gregory's pinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2). The claimant challenges the weight assigned to her opinion by arguing that the ALJ was not entitled to find the opinion an "act of courtesy." The undersigned Magistrate Judge agrees that such a statement is unsupported by the record and disfavored by the court. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's

-10-

subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).) [quotations omitted] [emphasis in original]. However, that was not the sum total of the ALJ's evaluation. Immediately preceding this statement, the ALJ set out the applicable factors and cited evidence relevant to these factors as listed above. There is no indication here that the ALJ misread the *sum total of the evidence* in the record, and the ALJ connected the evidence in the record to the claimant's RFC based on the relevant factors, and *still* concluded that the claimant could perform sedentary work.

As to Mr. Dahlke's assessment, Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by him here. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or

decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact, (ii) whether the opinion is consistent with other evidence, (iii) the extent the source provides relevant supporting evidence, (iv) how well the source's opinion is explained, (v) whether claimant's impairment is related to a source's specialty or area of expertise, and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The claimant argues that it is not an "opinion," but rather objective test results that are seemingly unassailable and are required to be incorporated into the RFC. Here, the ALJ adopted an RFC that was either more limiting (in the case of the weight the claimant could lift), or exactly reflective of the limitations found (as to postural limitations and sit/stand every twenty to thirty minutes), with the exception of Mr. Dahlke's concluding statement that the claimant "requires frequent breaks through the day" (Tr. 197). The ALJ then proceeded to give a number of reasons for his finding that the claimant did not require unscheduled breaks. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard*, 379 F.3d at 949.

Finally, the claimant challenges the ALJ's assessment of Dr. Krishnamurthi's opinion, arguing the ALJ "brushed aside" most of the evidence in the record. On the

contrary, the ALJ's opinion reflects that he considered the entirety of the evidence, in addition to the claimant's own testimony and prepared statements, and including her nonsevere mental impairments, to arrive at the assigned RFC. Here, the ALJ's assessment of Dr. Krishnamurthi's opinion was sufficient for the undersigned Magistrate Judge to understand the weight assigned as well as the reasons for that weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform sedentary work. When all the evidence is taken into account, the conclusion that the claimant could perform sedentary work is thus supported by substantial evidence.

The claimant's final contention is that she cannot perform the jobs identified by the ALJ because she cannot perform the designated RFC. But the ALJ concluded otherwise, and as discussed above, substantial evidence supports the ALJ's determination in this regard. The claimant's final contention is therefore without merit.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that

the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**